UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARLA E. PERKINS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-359-XR |
| | § | |
| JOHN E. POTTER, in his official capacity as | § | |
| POSTMASTER GENERAL, | § | |
| | § | |
| *Defendant(s)*. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's Motion for Summary Judgment (Docket Entry No. 43), Plaintiff's response (Docket Entry No. 46), and the record in this case.  For the following reasons, Defendant's motion is GRANTED.

## Background

Plaintiff Carla Perkins filed suit against Defendant Postmaster General John E. Potter for employment discrimination.[1]  She states that she possessed the same required qualifications for employment as a Hispanic male employee, Rey Villanueva, but she "was held to a much less favorable standard of treatment . . . .[2]  On September 22, 2005, Villanueva was allowed "his usual union hours to conduct his usual union duties."[3]  On that date, Plaintiff's supervisor, Elena Ordaz,

---

[1]Perkins also states that she "was discriminated against; African American Female Postal Employee . . . ."  2d Am. Compl. 1, Feb. 10, 2010 (Docket Entry No. 25).  Plaintiff's claims for race and sex discrimination were dismissed in a previous order.

[2]*Id.*

[3]*Id.*

who had allowed Villanueva to conduct his union duties, "embarrassingly in front of other co-workers, removed [Perkins] . . . from the workroom floor . . . at a very crucial time of the work night."[4]  Ordaz then engaged Perkins in a "'Pre-Disciplinary Discussion' for 'delaying the mail.'"[5]  Perkins claims that because she suffers from obsessive compulsive personality disorder ("OCPD"), Ordaz's actions were disruptive.[6]  Perkins considered the discussion "an abrupt intrusion of [her] concentration which broke [her] focus, thus negatively affecting productivity . . . ."[7]  She claims that her supervisor refused to have Villanueva help Perkins with the mail and that there "was no reasoning with [her supervisor] because [she] became even more aggressive, intimidating, and out-of-control."[8]

Plaintiff claims that her supervisor "[tore] down [her] self-respect" and "threatened [her] job security in a way that stripped [her] of her dignity and left [her] feeling vulnerable."[9]  Perkins states that her supervisor instructed her on how she should "pitch" her mail and that she could miss the dispatch deadline at her current pace.  Her supervisor pointed out a coworker and how she pitched her mail.  Perkins calls this comparison unfair since Perkins did not have the same job as the coworker.  She states that her supervisor's instructions "went against [Perkins's] trait of having O.C.P.D. . . . [and] [w]ith age that trait becomes even more rigid, increasing [her] inability

---

[4]*Id.* at 1–2.

[5]*Id.* at 2.

[6]*Id.*

[7]*Id.*

[8]*Id.* at 4.

[9]*Id.* at 3.

2

to be automatically flexible."[10]

## Procedural History

Plaintiff filed suit and then amended her complaint, asserting claims against the Postmaster General, the United States Postal Service, and several individual defendants for emotional distress, violation of a right to privacy, retaliation, harassment, and discrimination based on disability, race, age, sex, and religion.[11]  Defendants filed a motion for partial dismissal of Plaintiff's claims for harassment and discrimination and submitted an Answer to the retaliation claim.[12]  On January 26, 2010, the Court issued an order dismissing the United States Postal Service and the named individuals and Plaintiff's claims for emotional distress; privacy violations; harassment; and discrimination based on race, gender, religion, age, and disability.[13]  The Court dismissed Plaintiff's age, disability, and harassment claims without prejudice and Plaintiff amended her complaint in a document entitled "Appeal and Response To Order of Court Granting Defendants' Motion to Dismiss (Without Prejudice)."[14]  Defendant filed a second

---

[10]*Id.* at 3–4.

[11]Pl.'s 1st Am. Compl., Oct. 14, 2009 (Docket Entry No. 12).

[12]Def.s' Mot. for Partial Dismissal, Dec. 28, 2009 (Docket Entry No. 18); Answer, Dec. 28, 2009 (Docket Entry No. 19).

[13]Order on Mot. to Dismiss, Jan. 26, 2010 (Docket Entry No. 23).

[14]Pl.'s 2d Am. Compl.  Plaintiff did not restate her claim for retaliation in the amended complaint nor did the Court's order on the motion to dismiss address that claim.  The Court recognizes that Perkins is proceeding as a *pro se* litigant.  Her claim for retaliation is stated in her 1st Amended Complaint of October 14, 2009, to which Defendant answered on December 28, 2009.

motion to dismiss,[15] and the Court dismissed the harassment, age discrimination, and disability discrimination claims, leaving only the retaliation claim pending.[16]  Defendant now moves for summary judgment on the retaliation claim.[17]

## Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is "material" if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  To avoid summary judgment, the nonmoving party must adduce admissible evidence that creates a fact issue concerning the existence of every essential

---

[15]2d Mot. to Dismiss, Feb. 18, 2010 (Docket Entry No. 28).

[16]Ord. on 2d Mot. to Dismiss, Apr. 27, 2010 (Docket Entry No. 35).

[17]Def.'s Mot. for Summ. J., Sep. 8, 2010 (Docket Entry No 43).

component of that party's case and unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). A motion for summary judgment cannot be granted simply because there is no opposition. *Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006).

## Analysis

If a plaintiff fails to make a prima facie showing of retaliation, then summary judgment for the defendant is warranted. *Dallas v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004); *Ackel v. National Communications, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (citing *Banks v. East Baton Rouge Parish School Board,* 320 F.3d 570. 575 (5th Cir. 2003)). A prima facie case of retaliation requires evidence that (1) the Plaintiff engaged in protected conduct, (2) the Plaintiff was thereafter subjected to an adverse employment action, and (3) the adverse employment action was made in response to the protected conduct. *Hockman v. Westward Communications,* 407 F.3d 317, 330 (5th Cir. 2004) (citing *Chaney v. New Orleans Public Facility Management,* 179 F.3d 164, 167 (5th Cir. 1999)).

## 1. Protected Conduct

Defendant does not dispute that Plaintiff engaged in protected conduct. Protected conduct includes an employee's opposition to an act of discrimination that is illegal under Title VII, or participation in a Title VII investigation. 42 U.S.C. § 2000e-3. Plaintiff initiated several EEO

Complaints in relation to alleged discrimination and harassment by her supervisors.[18]  These complaints expressed her opposition to her supervisors' alleged discrimination against her and constituted participation in investigations regarding the same.

## 2.  Materially Adverse Action

Defendant argues that none of the incidents alleged by Plaintiff were "materially adverse," because they did not result in any injury or any effect at all on Plaintiff's pay, benefits, status, or level of responsibility.[19]  A "materially adverse" action is one that would "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern and Santa Fe Railway. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted).  The purpose of the anti-retaliation provision is to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms."  *Id.* (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346 (1997)).

"[N]ormally petty slights, minor annoyances, and simple lack of good manners" do not constitute materially adverse actions.  *Id.*; *Aryain v. Wal-Mart Stores Texas LP,* 534 F.3d 473, 485 (5th Cir. 2008).  When "pay, benefits, and level of responsibility remain the same," an employment action is not considered to be materially adverse.  *Watts v. Kroger Co.,* 170 F.3d 505, 512 (5th Cir. 1999).

Plaintiff has alleged that she suffered psychological trauma as a result of the discussion with Ordaz, and that the following day she "became incapacitated" such that she was unable to

---

[18]*See* Information for Pre-Complaint Counseling, Case No. 1G-781-0054-05, Oct. 7, 2005 (attached as Exhibit 4 to Def.'s Mot.); Information for Pre-Complaint Counseling (no case number assigned), Feb. 28, 2006 (attached as Exhibit 8 to Def.'s Mot.); Information for Pre-Complaint Counseling, Case No. 1G–781-0018-07, Jan. 16, 2007 (attached as Exhibit 10 to Def.'s Mot.).

[19]Def.'s Mot. for Summ. J at 6.

return to work.[20]  The evidence before the Court suggests that Plaintiff's psychological state deteriorated significantly after the September 22, 2005 incident.  She stated in her EEO complaint: "I was having a nervous reaction on my left arm and began to scratch profusely until I began to bleed.  Also the whole scene of the discussion evaded my dreams which led to disturbing my sleep which led to stealing my peace of mind."[21]  She also indicated, however, that "[t]he doctor did give a return to work notice."[22]  In relation to her settlement proposal, Perkins included a letter from a counselor who had treated her, indicating the extent of psychological distress that she had suffered after September 23, 2005, purportedly due to her stressful work environment, indicating that she was "incapacitated by her anxiety and depression," that "[h]er lifestyle changed dramatically, and that "the distress at work led to her having to retire earlier than planned."[23]

Although Plaintiff suffered increased psychological distress as a result of several incidents and actions at work, the actions did not rise to the level of being "materially adverse" as that is defined with regard to retaliation.  The evidence indicates that Plaintiff suffered from several pre-existing mental conditions which were exacerbated by the stress of her job and what she perceived to be harassment.[24]  While her circumstances are unfortunate, Perkins has presented no evidence

---

[20]Pl.'s 2nd Am. Compl. at 5.

[21]Information for Pre-Complaint Counseling, Case No. 1G-781-0054-05, Oct. 7, 2005 (attached as Exhibit 4 to Def.'s Mot.).

[22]*Id.*

[23]Letter from Dolores G. Osborn, Sunrise Counseling Center, June 26, 2009 (attached as Exhibit 2 to Plaintiff's written settlement offer of Mar. 11, 2010).

[24]Letter from Marlene Sanchez, MD, June 15, 2009 (indicating that Perinkins has been seen as a patient for several different diagnoses from beginning in 2001); Letter from Dolores G. Osborn, Sunrise Counseling Center, June 5, 2010 (stating that Perkins is unable to return to any

establishing that the deterioration of her mental condition arose from the alleged retaliation, as distinct from any other aspects of her life or of her job.

Furthermore, the purpose of the anti-retaliation provision is to prevent employer interference with otherwise available Title VII mechanisms.  The evidence before the Court demonstrates that Plaintiff herself was not deterred from filing any EEO complaints or otherwise exercising her Title VII rights as a result of the alleged retaliation, and the conduct did not rise to the level that would deter an objectively reasonable employee from seeking protection of EEO mechanisms.  During her deposition on July 26, 2010, Plaintiff admitted that Ordaz's actions on September 22, 2010 did not dissuade her from filing an EEO Complaint, and in fact she did file an EEO complaint relating to the incident.[25]  She stated that she was "not sure" whether any of her co-workers would have been dissuaded from filing an EEO complaint if Ordaz had spoken to them in a similar way.[26]

**3.  Causation - Retaliation "In Response to Protected Conduct**"

In order to establish that the employee's protected conduct resulted in the alleged retaliation, the employee must establish that the employer knew of the employee's protected activity.  *Kroger,* 170 F.3d at 512; *Manning v. Chevron Chemical Co.,* 332 F.3d 874, 883 (5th Cir. 2003).  Perkins has presented no evidence that any of her supervisors were aware of her prior EEO

---

type of work due to her psychiatric conditions) [both submitted to the Court as part of Plaintiff's discovery responses].

[25]Deposition of Carla E. Perkins 78:22-79:9, July 26, 2010 (attached as Exhibit B to Def.'s Mot.); Information for Pre-Complaint Counseling (no case number assigned), Feb. 28, 2006 (attached as Exhibit 8 to Def.'s Mot.).

activity when they committed their alleged retaliatory acts, or that their acts were in any way related to her prior complaints.

Plaintiff stated in her deposition that Ordaz would only be aware of her prior allegations of discrimination by the EEO Complaints that she subsequently filed.[27]  She stated that she did not know whether her September 2005 discussion with Ordaz was related to her prior allegations,[28] and that she was not sure whether Ordaz had any knowledge of her discrimination and retaliation claims against her prior to their mediation in December 2005.[29]  She also stated that Ordaz never made any comments to her about her EEO activity, and that she "didn't care" about it because "nothing ever comes of it."[30]  Although Plaintiff also claimed that Ordaz's retaliation was because she "spoke up about her not having the courage to treat [her] equally as Villanueva,"[31] she was unable to provide any evidence to that effect, or to indicate that the September 22, 2005 discussion was inspired by anything other than concern about her job performance.[32]

## CONCLUSION

Plaintiff has not presented evidence of any "materially adverse" actions within the meaning of Title VII claims for retaliation.  Furthermore, she has presented no evidence that her

---

[27]*Id.* at 41:13-43:8.

[28]*Id.* at 58:2-13, 60:2-11.

[29]*Id.* at 91:11-18.

[30]*Id.* at 61:9-12.

[31]*Id.* at 60:12-23.

[32]*Id.* at 113:20-114:2, 114:3-5, 118:23-119:3, 123:18-23, 123:24-124:6, 126:17-127:5, 143:3-12.

protected conduct caused the alleged retaliation by her supervisors.  As such, she has failed to present a prima facie case of retaliation.  Summary judgment for the Defendant is GRANTED, and Plaintiff's claim of retaliation is DISMISSED.

It is so ORDERED.

SIGNED this 8th day of November, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE